UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Melinda Johnson, | : | Case No. 1:07CV2924 |
| Plaintiff | : | Judge Donald C. Nugent |
| v. | : | Magistrate Judge David S. Perelman |
| Commissioner of Social Security, | : | **REPORT AND RECOMMENDED DECISION** |
| Defendant | : | |

This action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3)seeking judicial review of defendant's final determination denying plaintiff's claim for supplemental security income benefits (SSI), 42 U.S.C. §1381 et seq., is pending decision upon the parties' submissions on the merits, pursuant to which plaintiff seeks entry of final judgment in her favor, alternatively, an order of remand,[1] and defendant seeks final judgment upholding the decision below.

The plaintiff applied for benefits on March 25, 2004, claiming an onset date of June 1, 2000, when she was just short of 17 years old (D.O.B. July 26, 1983).  In an accompanying Disability Report - Child completed by Ms. Deborah Stallworth, identified as an "aunt/foster mom," the basis fo the plaintiff's alleged disability was stated to be "developmentally handicapped."

---

[1] The remand sought is pursuant to the fourth sentence of §405(g).  The record contains a letter report submitted to the Appeals Council subsequent to entry of the ALJ's decision (R. 452), which could only be considered herein in the context of a motion for remand pursuant to the sixth sentence of §405(g) for consideration of new and material evidence for which there is good cause for failure to provide such evidence to the ALJ.  No such relief is sought by the plaintiff, perhaps because of the conclusory nature of that letter and/or that on its face it reflects evidence that should have been presented to the ALJ.

This was not the first application for SSI filed by, or on behalf, of the plaintiff. The record contains applications filed on January 26, 2001 and November 5, 2002, each of which ended with denial at the state agency level. The Administrative Law Judge (ALJ), whose decision upon de novo review represents the defendant's final determination noted those prior applications, stating in his decision:

> The record establishes that Ms. Johnson has filed a number of prior applications, most recently on November 4, 2002, which was denied initially on May 2, 2003 and after reconsideration on August 6, 2003 (Exhibits 3B and 5B). I find no basis for reopening this claim, the decision on which remains final and binding through August 6, 2003. Therefore, the earliest onset date under consideration in this decision is in conjunction with her current claim, filed on March 5, 2004 (20 C.F.R. §416.1487 *et seq.*).

Having so held the ALJ could have applied the rule of res judicata insofar as the plaintiff's claim of disability up to August 3, 2003, and only considered evidence generated prior to that date in comparison to that thereafter in order to ascertain whether that had been a worsening in the plaintiff's condition. However, he did not do so. Rather, in determining whether the plaintiff was entitled to benefits under her 2004 application he took into consideration the evidence which had been generated in conjunction with the plaintiff's prior applications.

Upon denial of the plaintiff's 2004 application at the state agency level she requested de novo hearing by an ALJ, and an evidentiary hearing pursuant thereto, at which the plaintiff was represented by counsel, was held on September 22, 2006. Testifying at that proceeding along with the plaintiff were Ms. Stallworth and a vocational expert, Mr. Ted Macy.

At that hearing the plaintiff stated that she had failed two BVR (Bureau of Vocational

Rehabilitation) placements,[2] being told that her problem was "lack of motivation," and when asked by the ALJ why she is unable to work testified:

> A. I get anxious real quick and have a lot of anxiety. And I feel that I'm not doing things right and—I guess you'd say I just, I do poorly. But I—
>
> Q. Okay. Well what do you mean when you say you feel anxiety?
>
> A. Just anxious and I don't like, I don't feel comfortable being around a lot of people.
>
> Q. Can you give us some examples of situations that make you feel anxious?
>
> A. Like when I go to the grocery store.

The plaintiff also testified to being depressed—"Not wanting to get out of bed. Not wanting to be around any body or really going anywhere." She stated that she was receiving counseling at the Pathways, which appears to be a public mental health facility.

On November 28, 2006 the ALJ entered his opinion denying plaintiff's claim. That decision became defendant's final determination upon denial of review by the Appeals Council on July 27, 2007. The ALJ's "Findings of Fact and Conclusions of Law" were:

> 1. Ms. Johnson has not engaged in substantial gainful activity at any time relevant to this decision (20 C.F.R. §§416.920(b) and 416.971, *et seq.*).
>
> 2. Ms. Johnson has the following severe impairments: a major depressive disorder (Exhibits 2F, 5F, 11F, 12F, 19F, 23F, 27F) and borderline intellectual functioning (Exhibits 2F, 6F, 12F) (20 C.F.R. §416.920(c)).

---

[2]The record reflects that the plaintiff was assessed at the New Hope Vocational Services in Painesville, Ohio in February-March, 2004 upon referral of the BVR. The final report from that evaluation states in the concluding portion "Melinda does not at this time seem to be motivated or willing to complete a program. Melinda's aunt stated she felt this may be in part to her being overwhelmed by everything that is going on in her life at the present time. It is the recommendation of this director that Melinda's case be closed until she can resolve her family and personal issues."

3. Ms. Johnson does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § Part 404, Subpart P, Appendix 1 (20 C.F.R. §416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that Ms. Johnson retains the following residual functional capacity. She has no exertional limitations. She is limited to simple routine, low-stress tasks that do not involve arbitration, confrontation, negotiations, or directing the work of others.

5. Ms. Johnson is unable to perform any past relevant work (20 C.F.R. §416.965).

6. Ms. Johnson was born on July 26, 1983, and since her alleged onset date has been a younger person, currently 23 years of age (20 C.F.R. §416.963).

7. Ms. Johnson has the equivalent of a high school education and is able to communicate in English (20 C.F.R. §416.964).

8. Transferability of job skills is not material to the determination of disability in this case (20 C. F. R. §416.968).

9. Considering Ms. Johnson's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform (20 C.F.R. §§416.960(e), and 416.966).

10. Ms. Johnson has not been under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 C.F.R. §416.920(g)).

The standards which control on a review of this nature were summarized by the Sixth Circuit in Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984) as follows:

> Judicial review of the Secretary's decision is limited in scope to determining whether the findings of fact made by the Secretary are supported by substantial evidence and deciding whether the Secretary employed the proper legal criteria in reaching her conclusion, Walston v. Gardner, 381 F.2d 580, 585 (6th Cir. 1967). This Court may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility, Myers v. Richardson, 471 F.2d 1265

4

> (6th Cir. 1972). Rather "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive..." 42 U.S.C. §405(g).
>
> The Supreme Court has stated that "substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantiality of the evidence must be based upon the record taken as a whole. Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980), citing Futernick v. Richardson, 484 F.2d 647 (6th Cir. 1973). "Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the `substantiality of evidence must take into account whatever in the record fairly detracts from its weight'." Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978), quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474 (1951). "We may not focus and base our decision entirely on a single piece of evidence, and disregard other pertinent evidence." Hephner v. Mathews, 574 F.2d 359, 362 (6th Cir. 1978).

In resolving the issue of whether the defendant's final determination is supported by substantial evidence the decision upon judicial review cannot turn upon whether the reviewing court agrees with the Secretary's determination. Indeed, the reviewing court may conclude that substantial evidence would support a final determination contrary to that arrived at by the defendant and yet be obliged to affirm the defendant's final determination. In Mullen v. Bowen, 800 F.2d 535, at 545 (6th Cir. 1986), the court cited with approval the following from Baker v. Heckler, 730 F.2d 1147, 1150 (8th Cir. 1984):

> The substantial-evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposition decision.

On this appeal the plaintiff asserts that "the Administrative Law Judge's decision that plaintiff's condition does not meet or equal Listing 12.04—without consulting a medical expert—is

5

not supported by substantial evidence." Listing 12.04 of the Listings of Impairments, 20 C.F.R., Part 404, Subpart P, Appendix I,[3] calls for recognition of disability for a mental disorder on the following basis:

> **12.04 AFFECTIVE DISORDER.** Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
>
>   A. Medically documented persistence, either continuous or intermittent, of one of the following:
>
>   1. Depressive syndrome characterized by at least four of the following:
>
>      a. Anhedonia or pervasive loss of interest in almost all activities; or
>      b. Appetite disturbance with change in weight; or
>      c. Sleep disturbance; or
>      d. Psychomotor agitation or retardation; or
>      e. Decreased energy; or
>      f. Feelings of guilt or worthlessness; or
>      g. Difficulty concentrating or thinking; or
>      h. Thoughts of suicide; or
>      i. Hallucinations, delusions or paranoid thinking; or
>
>   2. Manic syndrome characterized by at least three of the following:
>
>      a. Hyperactivity; or
>      b. Pressure of speech; or
>      c. Flight of ideas; or
>      d. Inflated self-esteem; or
>      e. Decreased need for sleep; or
>      f. Easy distractability; or
>      g. Involvement in activities that have a high

---

[3]The Listings of Impairments set out diseases and disorders which, if all of the elements specified therein are satisfied, are deemed disabling.

        probability of painful consequences which are not recognized; or

      h. Hallucinations, delusions or paranoid thinking; or

   3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

   AND

B. Resulting in at least two of the following:

   1. Marked restriction of activities of daily living; or

   2. Marked difficulties in maintaining social functioning; or

   3. Marked difficulties in maintaining concentration, persistence, or pace; or

   4. Repeated episodes of decompensation, each of extended duration;

   OR

C. Medically documented history of a chronic affective disorder of at least 2 years duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychological support, and one of the following:

   1. Repeated episodes of decompensation, each of extended duration; or

   2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

   3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

Plaintiff contends that:

> Substantial evidence proves Plaintiff's mental impairment meets, or at least equals, Listing 12.04. The ALJ's decision to the contrary, without the support of a medical expert, is not supported by substantial evidence. Plaintiff suffers from major depressive disorder, severe and recurrent associated with symptoms such as sadness, anhendonia, impaired appetite, poor sleep, poor concentration, low energy, and feelings of helplessness, hopelessness, and worthlessness (Tr. 357, 423, 431, 405, 447). These symptoms satisfy the "A" criteria of Listing 12.04.
>
> Plaintiff's condition satisfied the "B" criteria. In fact, the most recent consultative examination performed by the state agency alone proves Plaintiff meets the "B" criteria. Consultative examiner, Dr. Leventhal, opined claimant has **marked** limitations in relating to others, including fellow workers and supervisors and **marked** limitations in her ability to maintain attention, concentration, persistence and pace (to perform even simple repetitive tasks) (415-416) which meets the "B" prong. Further, Plaintiff's GAF score of 35 also confirms listing level impairment in social and occupational settings (Tr. 415).
>
> Had the ALJ accepted Dr. Leventhal's findings, he would have found that Plaintiff meets/equals Listing 12.04. Instead the ALJ misinterprets this evidence, and uses flawed reasoning to reject said opinion. The ALJ's reason for rejecting the findings of Dr. Leventhal is as follows:
>
>> ". . .There is no indication in the Pathways notes of worse than mild to moderate symptoms. Taking the Pathways evidence together with Halas's February 04, 2003 assessment of a GAF of 55 leads me to conclude that Dr. Leventhal's assessment of a GAF of 35, while probable accurate on that day, is not an accurate assessment of Ms. Johnson's functioning over time."

The report of Dr. Leventhal alluded to by plaintiff was a consultative examination performed by Dr. Donald S. Leventhal, a clinical psychologist, on June 15, 2004 upon referral of the Social Security state agency. There is no doubt that Dr. Leventhal's conclusions support the conclusion

8

that the plaintiff suffers from a mental impairment of disabling severity.  His report ends:

> **DSM-IV Multiaxial Classification:**
>
> Axis I     Major depressive disorder, recurrent, severe without psychotic features.
>
> Axis II:   No diagnosis.
>
> Axis III:  Medical disorders as diagnosed.
>
> Axis IV:  Psychosocial stressors: Social isolation; unemployment.
>
> Axis V:   Current GAF: With regard to level of functioning and symptom severity, there is major impairment with the GAF range being between 31 and 40.  Current GAF is 35.
>
> **Discussion of the Four Work-Related Mental Abilities:**
>
> 1. The claimant's mental ability to relate to others, including fellow workers and supervisors is markedly impaired due to her discomfort in social situations and impaired with regard to body hygiene.  Also, the claimant's depressed emotional state serves to markedly impair her relationships to others.
>
> 2. The claimant's mental ability to understand, remember and follow instructions is markedly impaired due to her depressed emotional state and impaired ability to concentrate.
>
> 3. The claimant's mental ability to maintain attention, concentration, persistence and pace to perform simple repetitive tasks is markedly impaired due to her depressed emotional state and impairment in concentration.
>
> 4. The claimant's mental ability to withstand the stress and pressures associated with day-to-day work activity is markedly impaired due to the claimant's social anxiety, depression, and impaired concentration.
>
> 5. If the claimant is awarded funds, she is believed capable of managing them on her own.

The salient portions of the ALJ's decision pertaining to the plaintiff's mental state vis-a-vis Listing 12.04 reads:

> I.Q. testing in March 2002, when Ms. Johnson was 18 years old and enrolled in the Mayfield City Schools, resulted in a verbal I.Q. score of 81, a performance I.Q. score of 78, and a full scale I.Q. score of 78, indicating borderline intellectual functioning (Exhibit 6F).
>
> Borderline intellectual functioning is evaluated under Listing 12.05 of the Listing of Impairments. Ms. Johnson's impairment does not satisfy the requirements of Listing 12.05C, which requires a valid verbal, performance, or full scale I.Q. in the range of 60-70. None of Ms. Johnson's scores was that low.
>
> At the request of the Bureau of Disability Determination in conjunction with her earlier claim, Richard C. Halas, M.A., did a psychological evaluation of Ms. Johnson on February 4, 2003. he diagnosed a depressive disorder and borderline intellectual functioning based on previous testing. He assigned a Global Assessment of Functioning (GAF) of 55, indicting moderate symptoms (Exhibit 12F).
>
> Also at the Bureau's request and in conjunction with the current claim, Donald S. Leventhal, Ph.D., did another psychological evaluation of Ms. Johnson on June 22, 2004. He noted that her mother had died in April 2000 and that her father left home the next day. She complained of being depressed and anxious since that time. Dr. Leventhal diagnosed a recurrent, severe major depressive disorder and assigned a GAF of 35, indicative of serious symptoms (Exhibit 19F).
>
> On the other had, Ms. Johnson sought counseling at Pathways and had an initial evaluation on March 9, 2004 by Kate Proehl, N.D., R.N. She complained of decreased concentration, anxiety, increased irritability, decreased concentration, decreased motivation, sleep problems, and anhedonia. Ms. Proehl diagnosed a major depressive disorder with features of anxiety and assigned a GAF of 60, indicating moderate tending toward mild symptoms (Exhibit 23F).
>
> Ms. Johnson remained under treatment at Pathways, with some missed appointments, through January 26, 2006 (Exhibit 27F). A note dated November 11, 2004 stated that her home schooling was complete and that she was receiving a GED. The mental status

10

examination was within normal limits (Exhibit 26F, 2). The treatment note for June 6, 2005 says that she was taking classes to become a nurse's aide. The diagnosis on that date were a major depressive disorder and grief and she was counseled to increase her daily activities (Exhibit 27F).

There is no indication in the Pathways notes of worse than mild to moderate symptoms. Taking the Pathways evidence together with Mr. Halas's February 4, 2003 assessment of a GAF of 55 (19F) leads me to conclude that Dr. Leventhal's assessment of a GAF of 35, while probably accurate on that day, is not an accurate assessment of Ms. Johnson's functioning over time.

* * *

Ms. Johnson has no severe physical impairments. She alleges mental and emotional problems and symptoms, and has received treatment at Pathways since the date of her application (Exhibits 23F, 26F and 27F). She has required neither acute inpatient or outpatient emergency care or treatment during the period under review in this decision.

Evidence regarding Ms. Johnson's daily activities and history of work attempts establishes that she has a problem with motivation, which she herself has acknowledged. However, to the extent that she is unmotivated, this does not establish a medical basis for disability, nor is Ms. Johnson credible in alleging an incapacity for all sustained work activity.

No treating source refers to Ms. Johnson as having incapacitating or debilitating symptoms that would prevent her being able to work.

On the other hand, Mr. Halas thought that she was markedly impaired in her ability to deal with workplace stress (Exhibit 12F). Dr. Leventhal opined that she was markedly impaired in her abilities to maintain attention and concentration, to understand, follow, and carry out instructions, to relate to others, and to withstand stress (Exhibit 19F). Both of these opinions are based upon one-time interviews by non-treating sources and are not otherwise corroborated in the record. In particular, these opinions are not supported by the evidence from the mental health professionals at Pathways or with the vocational rehabilitation professionals at the Bureau of Vocational Rehabilitation, whose opinions are entitled to greater deference.

> The analysis completed by BVR describes Ms. Johnson's lack of dependability and indicates that she was tardy 9 out of 13 days that she was present and that she missed 3 other days out of 16 days in the program. She did not increase her speed or improve in her work quality and had problems with motivation. She was often off task. She was accompanied by a "cousin" and exhibited unacceptable behavior in the workplace, displaying her affection for him, which suggested to the evaluator that this person was actually her boyfriend (Exhibit 18E, 7).
>
> Ms. Johnson is described in the BAR [sic] records as "uninterested in the tasks" and having "an attitude" toward her work (Exhibit 18E, 6). These observations do not evidence a medical basis for her inadequate performance in the workplace.
>
> Consequently, I consider the opinions of Ms. Johnson's treating sources to be more persuasive that the opinions of Dr. Leventhal and Mr. Halas (Exhibit 19F).

In this Court's opinion, while it might have been desirable for the ALJ to avail himself of the benefit of testimony from a medical expert with a mental health background this Court cannot find that his failure to do so fatally undermines his decision. This Court, as did the ALJ, has reviewed the records of the Pathways facility where the plaintiff received counseling (Exhibits 23F and 26F) and must conclude that the ALJ's interpretation of that evidence was not beyond his "zone of choice" as trier of the facts. This Court must note that although those notes cover the period March 9, 2004 through June 6, 2005 they only reflect seven counseling sessions (March 9, 2004, April 13, 2004, June 14, 2004, September 20, 2004, November 11, 2004, January 26, 2005,[4] and June 6, 2005) over that fifteen month period, hardly what one might expect of an individual suffering from a debilitating mental impairment. Particularly striking is that the plaintiff was only seen three times in the nine months between September 2004 and June 2005.

---

[4] In what must be an error in dating that note reads that it is of a session held on January 26, 2006.

It is, therefore, recommended that final judgment me entered in defendant's favor.

s/DAVID S. PERELMAN
United States Magistrate Judge

DATE:    February 4, 2009

## OBJECTIONS

Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).